1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JONTE T WILLIS,

                      Plaintiff,

      v.

WASHINGTON STATE
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES; WESTERN
STATE HOPITAL; RON ALDER, Chief
Executive Officer of Western State
Hospital, in his personal and official
capacity; and DR. BRIAN
WAIBLINGER, Medical Director of
Western State Hospital, in his personal
and official capacity,

                      Defendant.

CASE NO. C16-5113 RBL

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

DKT. 14, 20

THIS MATTER is before the Court on Plaintiff Jonte Willis's Motion for Summary

Judgment [Dkt. #14], and Defendants Ron Alder and Dr. Brian Waiblinger's Motion for

Summary Judgment [Dkt. #20]. Willis suffered a traumatic brain injury in the ring, ending his

boxing career. Months later, he attacked his girlfriend, and was charged with second degree

assault and felony harassment. A psychological evaluation determined that he was not competent

to stand trial, and the Court ordered his admission to Western State Hospital to restore his

competency within ninety days. Instead, he lingered in jail for ninety-one days, mostly in solitary confinement, before he was admitted to the hospital. He sued DSHS, Western State, and state officials Alder (former CEO of Western State)[1] and Waiblinger (former Medical Director of Western State)[2], in their official and personal capacities, for violation of his constitutional due process rights. Willis also asserts state law claims for negligence and false imprisonment.

Willis seeks summary judgment on his claims, arguing that the defendants are bound by the result of a prior, similar class action determining that lengthy pre-trial detention while awaiting competency restoration is unconstitutional. The state defendants argue that they are entitled to Eleventh Amendment Immunity and that collateral estoppel does not apply. The individual defendants seek summary judgment on their claim of qualified immunity, and point out that that issue was not addressed, much less adjudicated, in the prior case.

## I. FACTS

In April 2014, Willis's professional boxing career ended suddenly when he experienced traumatic blows to the back of his head. Willis started behaving strangely and grew increasingly irritable, paranoid, and aggressive. He claimed to be "the new son of God" and believed he was a "Terminator T9-1000" on "a mission." He spoke "in tongues," "cried like a baby," and sprinkled dirt contaminated with cat urine on his daughter because he believed cats were holy and it would protect her. In July 2014, his former girlfriend reported he tried to strangle her, but "snapped out

---

[1] As CEO of Western State, Alder oversaw budgeting and daily operations, including the duty to transport people for restoration of legal competence and compliance with state and federal laws.

[2] As Medical Director of Western State, Waiblinger supervised transportation of patients to the hospital, scheduled admissions, and developed the prioritizing algorithm for the admissions waitlist.

of it" when he realized his hands were around her neck. Willis was arrested and charged with second degree assault and felony harassment.

Pierce County Superior Court Judge Cuthbertson questioned whether Willis was competent to stand trial, and on August 12, 2014, ordered a competency evaluation. Willis remained in custody without bail pending that determination. A psychologist conducted an evaluation seven days later through a slot in Willis's jail cell door. The psychologist provisionally diagnosed Willis with psychotic disorder due to traumatic brain injury and concluded he lacked the capacity for a rational understanding of his legal case and the capacity to communicate with his attorney.

On August 27, 2014, Judge Cuthbertson found Willis incompetent and committed him to Western State for competency restoration for a period not to exceed ninety days. At the time, Western State's 270 forensic treatment beds were filled to capacity with a waiting list of over 100 criminal defendants, and Willis was not immediately admitted. On October 21, 2014, Willis remained in jail and Judge Cuthbertson found DSHS in contempt of his court order, issuing a fine of $500 per day "until the contempt is purged by admitting Mr. Willis to Western State Hospital." (Dkt. #15-5). Finally, ninety-one days after Judge Cuthbertson's initial order, Western State admitted Willis for competency restoration on November 26, 2016. By the time Willis was admitted to Western State his pretrial detention exceeded 120 days, mostly in solitary confinement.

Willis sued, claiming his constitutional rights were violated by the delay. He now seeks summary judgment on that claim. He argues the Defendants are collaterally estopped from re-litigating their liability for the delay, because a prior class action already determined that delaying admission for pretrial detainees awaiting competency restoration for an even shorter

period was a violation of their constitutional rights. *See Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037 (9th Cir. 2016).

The state agencies and officials in their official capacity argue that *Trueblood* does not entitle Willis to summary judgment. Instead, they argue, the Eleventh Amendment bars Willis's §1983 suit. They argue that the agencies are not "persons" for purposes of §1983. The officials argue that *Trueblood* involved an injunction, not a damages claim, and that the Eleventh Amendment bars his §1983 damage claims against the state officials in their official capacities.

Alder and Waiblinger also argue that collateral estoppel does not apply to Willis's personal capacity claims against them, because, even if Willis's rights were violated, they are entitled to qualified immunity—an issue that was not litigated in *Trueblood.*

Willis concedes that his §1983 claims against the state agencies are flawed. But he claims that changing the liability theory from "official" to "personal" does not deprive *Trueblood* of its collateral estoppel effect.

Alder and Waiblinger seek summary judgment on Willis's §1983 claims against them personally, arguing they are entitled to qualified immunity. They argue that at the time of Willis's incarceration, the law was not clearly established that indefinitely incarcerating incompetent pretrial detainees due to an unusual spike in competency restoration referrals is a violation of due process.

Willis argues the officials are not entitled to qualified immunity because, at the time of his incarceration, the law *was* clearly established that indefinite pretrial incarceration for incompetent detainees is a violation of due process, which cannot be excused by lack of funds or facilities. Furthermore, he argues, the officials knew this and admitted in *Trueblood* that seventy-one and eighty-nine days for those plaintiffs was "excessive and indefensible."

## II. DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

### A.     Willis's Motion for Summary Judgment.

#### 1.   State Agencies And State Officials In Their Official Capacities.

Willis sued state agencies and state officials in both their official and personal capacities. The state agencies and the officials in their official capacities argue the Eleventh Amendment bars Willis's §1983 claim against them. The state officials argue that because Willis is seeking damages, rather than an injunction, the Eleventh Amendment bars his §1983 claims against them in their official capacities.

1   Willis concedes the state agency defendants are not subject to suit under the Eleventh

2   amendment[3].

3   The type of relief sought affects the viability of a §1983 claim against state officials in

4   their official capacities. "[A] federal court's remedial power, consistent with the Eleventh

5   Amendment, is necessarily limited to prospective injunctive relief, and may not include a

6   retroactive award which requires the payment of funds from the state treasury." *Edelman v*

7   *Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted). State officials in official capacity

8   suits for damages assume the identity of the government that employs them because an award

9   would require payment of funds from the state treasury, thus they are not a "person" under

10  §1983. *See Hafer v. Melo,* 502 U.S. 21, 27 (1991).

11  Willis's §1983 claim seeks damages, not an injunction. Therefore, Alder and Waiblinger

12  are "persons" in their personal capacities, but not in their official capacities. The only

13  appropriately named defendants for the §1983 claim are Alder and Waiblinger in their personal

14  capacities. Accordingly, Willis's Motion for Summary Judgment as to the state agencies and

15  state officials in their official capacities is **DENIED**.

16  **2.  State Officials In Their Personal Capacities.**

17  Willis argues that Alder and Waiblinger are collaterally estopped from disputing their

18  liability for the lengthy delay in admitting him to Western State, because their liability was

19  already conclusively established in a prior class action addressing the same issue. *See Trueblood*

20  *v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037 (9th Cir. 2016).

21

22

23  _____

    [3] *See Will v Michigan Department of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in

24  passing §1983, had no intention to disturb the States' Eleventh Amendment immunity.")

1    Alder and Waiblinger concede Willis's rights were violated, but argue collateral estoppel

2    does not apply because their entitlement to qualified immunity was not previously litigated. The

3    *Trueblood* class sought injunctive and declaratory relief, not damages, so the officials were sued

4    in their official capacities only. They argue that their entitlement to qualified immunity was not

5    at issue in that case. But Willis sues them in their personal capacities, seeking money damages.

6    Willis responds that changing Alder and Waiblinger's liability from "official capacity" in

7    the prior suit to "personal capacity" in the present suit does not defeat the "identical issues" test

8    for collateral estoppel. His argument relies on a Supreme Court decision that did not involve

9    governmental immunities, and he does not address how government actors could be collaterally

10   estopped from asserting a defense that was not available to them in the prior case. *See Parklane*

11   *Hosiery Co v. Shore*, 439 U.S. 322, 329 (1979).

12   Collateral estoppel may be used offensively against a defendant who previously litigated

13   an issue and lost against another plaintiff. *Id*. To use collateral estoppel the issue at stake must be

14   identical to the prior litigation, the issue must have actually been litigated by the party against

15   whom estoppel is asserted, the party must have had a full and fair opportunity to litigate the

16   issue, and the determination of the issue in the prior suit must have been necessary to the

17   outcome. *See e.g. id.*; *Allen v. McCurry*, 449 U.S. 90, 94—95 (1980).

18   In *Trueblood*, these defendants argued they were not liable for leaving pretrial detainees

19   in jail for months while they await competency. *See Trueblood*, 822 F.3d at 1039—1042 (9th

20   Cir. 2016). The Court determined that such detention violates the detainees' constitutional rights,

21   and Alder and Waiblinger were liable in their official capacities for that violation *Id*. The district

22   court granted injunctive and declaratory relief, holding the Constitution requires them to "admit

23   persons ordered to receive competency restoration services into a state hospital within seven

24

1    days of the signing of a court order calling for restoration services." *Trueblood v. Washington*

2    *State Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1024 (W.D. Wash. 2015), *rev'd on*

3    *other grounds*, 822 F.3d 1037 (9th Cir. 2016).

4         Willis asserts the same constitutional violations as the *Trueblood* class, but he seeks

5    damages, not an injunction.  Officials sued in their personal capacity may invoke the affirmative

6    defense of qualified immunity, while the only immunities available to defendants in an official

7    capacity action are those that the governmental entity possesses. *See Hafer v. Melo,* 502 U.S. 21,

8    27 (1991). Alder's and Waiblinger's entitlement to qualified immunity was not previously

9    litigated, and *Trueblood* does not preclude them from asserting it as a defense to Willis's §1983

10   damage claims against them personally. Willis's Motion for Summary Judgment against the state

11   officials in their personal capacities is **DENIED**.

12       **B.**    **Alder and Waiblinger's Motion For Summary Judgment.**

13        Alder and Waiblinger argue qualified immunity shields them from personal liability

14   because, at the time of Willis's incarceration, it was not clearly established that indefinite pretrial

15   detention for incompetent detainees violates due process. While the state law set a target of seven

16   days to admit pretrial detainees for competency restoration, they claim reliance on an exception

17   that permitted delays when there is "an unusual spike in the…number of defendants requiring

18   restoration services." RCW 10.77.068(1)(c)(iv).

19        Defendants rely on this exception and the fact that it had not been litigated to argue that

20   the law was not clearly established at the time Willis was incarcerated while awaiting a bed at

21   Western State.

22        Willis responds that under defendants' logic, the state law exception allowed pretrial

23   detainees to be jailed for any length of time—even years—because there was not a place to

24

provide restorative treatment. He argues the officials admitted in *Trueblood* that wait times of eighty-nine and seventy-one days "are excessive and indefensible."  He argues the law was clearly established at the time of his incarceration. Thus, he claims, they are not entitled to qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable.

1    *See Brosseau,* 543 U.S. at 198. Qualified immunity "gives ample room for mistaken judgments"

2    and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

3         *Trueblood* held the Constitution requires pretrial detainees to be admitted into the state

4    hospital within seven days of a court order to admit for competency restoration. 101 F. Supp. 3d

5    at 1023, *rev'd on other grounds*, 822 F.3d 1037 (9th Cir. 2016). The defendants concede that

6    detaining Willis for ninety-one days after the court ordered him admitted within seven violated

7    his constitutional rights. But they deny that it was clearly established that indefinite pretrial

8    detention due to a spike in the number of defendants requiring restoration services was

9    unconstitutional, at the time of Willis's 2014 incarceration.

10        To be considered clearly established, the contours of a constitutional right "must be

11   sufficiently clear that a reasonable official would understand that what he is doing violates that

12   right. This is not to say that an official action is protected by qualified immunity unless the very

13   action in question has previously been held unlawful, but it is to say that in the light of pre-

14   existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640 (internal quotations

15   and citations omitted). "Officials can still be on notice that their conduct violates established law

16   even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Alder and

17   Waiblinger are not immune if it was objectively clear to a reasonably competent officer that a

18   pretrial detainee could not be jailed indefinitely, simply because there is no room in the state

19   hospital.

20        In 2003, the Ninth Circuit established that a state hospital violates the substantive due

21   process rights of incapacitated criminal defendants when it refuses to admit them in a timely

22   manner. *See Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1102, 1122 (9th Cir. 2003). It held that

23   leaving "incapacitated criminal defendants in jail for weeks or months violates their due process

24

rights because the nature and duration of their incarceration bear no reasonable relation to the

evaluative and restorative purposes for which the courts commit those individuals." *Id.* at 1122.

*Mink* was a class action civil suit brought by incapacitated pretrial detainees from Oregon who

"spent on average about one month in county jail… In many cases, defendants had to wait two,

three or even five months." *Id.* at 1106. There, the Ninth Circuit upheld the district court's

injunction requiring the state hospital to admit mentally incapacitated criminal defendants within

seven days of a judicial finding of incapacitation. *See id.* at 1123.

     *Mink* drew support for its conclusion from the framework set out in two Supreme Court

decisions: *Jackson v Indiana,* 406 U.S. 715 (1972) and *Youngberg v Romeo*, 457 U.S. 307

(1982). In *Jackson*, the Supreme Court articulated a general rule of reasonableness restricting the

duration of pretrial incarceration for incompetent defendants and requiring, at a minimum, "that

the nature and duration of commitment bear some reasonable relation to the purpose for which

the individual is committed." 406 U.S. at 733. Accordingly, "[w]hether the substantive due

process rights of incapacitated criminal defendants have been violated must be determined by

balancing their liberty interests in freedom from incarceration and in restorative treatment against

the legitimate interests of the state." *Mink,* 322 F.3d at 1121 (citing *Youngberg*, 457 U.S. at 321).

*Mink* found there is no "legitimate state interest in keeping mentally incapacitated criminal

defendants locked up in county jails for weeks or months. [It] not only contravenes the

legislature's statutory mandate [to provide] restorative treatment, it also undermines the state's

fundamental interest in bringing the accused to trial." 322 F.3d at 1121.

     Alder and Waiblinger attempt to distinguish *Mink* because it was based on an Oregon

statute that did not provide the same exceptions as Washington's statute. *See* RCW

10.77.068(1)(c)(iv). Specifically, while Washington's statute set a seven day target for

1  admission, it allowed for exceptions including "an unusual spike in the receipt of evaluation

2  referrals or in the number of defendants requiring restoration services has occurred, causing

3  temporary delays until the unexpected excess demand for competency services can be resolved."

4  *Id.*  However, the Ninth Circuit also made clear that "[l]ack of funds, staff or facilities cannot

5  justify the State's failure to provide such persons with the treatment necessary for rehabilitation."

6  *Mink*, 322 F.3d at 1121 (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)).

7  Washington cannot legislate its way out of the Constitution based on lack of funding or facilities.

8       Willis's case is similar to the plaintiff class in *Mink.* Although *Mink* did not establish a

9  bright line rule, it held that "weeks or months" was too long where the plaintiffs were detained

10  for an average of one month. *See id.* at 1122. The nature and duration of Willis's ninety-one day

11  detention, mostly in solitary confinement, bears no reasonable relation to the evaluative and

12  restorative purpose for which he was committed such that a reasonable person would not have

13  known his incarceration was unconstitutional.  This finding aligns with Alder and Waiblinger's

14  acknowledgment in *Trueblood*: "[C]urrently, the average waiting times for admission to WSH

15  for competency restoration for criminal defendants with serious and non-serious felony charges

16  are 89 and 71 days, respectively. **The State agrees that these wait times are excessive and**

17  **indefensible**." *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 2:14-cv-01178-

18  MJP, Doc. 95 p. 23 (emphasis added).

19       At the time of Willis's incarceration, it was clearly established that indefinitely

20  incarcerating incompetent defendants while they awaited competency restoration, because there

21  was not room in the state hospital, violated their constitutional due process rights. Accordingly,

22  Alder and Waiblinger are not entitled to qualified immunity. Their Motion for Summary

23  Judgment on this defense is **DENIED**.

24

1

### III. CONCLUSION

2          Willis's §1983 claims against the state defendants are barred by the Eleventh

3   Amendment. Collateral estoppel does not apply against the officials in their personal capacities

4   because the issue of qualified immunity was not litigated in the previous case. Willis's Motion

5   for Summary Judgment [Dkt. #14] is **DENIED**.

6          At the time of Willis's incarceration it was clearly established that indefinite pretrial

7   detention for incompetent detainees based on lack of facilities was unconstitutional. Alder and

8   Waiblinger's Motion for Summary Judgment [Dkt. #20] is **DENIED**.

9          IT IS SO ORDERED.

10         Dated this 21st day of March, 2017.

11

12                                              Ronald B. Leighton

13                                              Ronald B. Leighton
                                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24