HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JONTE T WILLIS, | CASE NO. C16-5113-RBL |
| Plaintiff, | ORDER |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al. | DKT. #30 |
| Defendants. | |

THIS MATTER is before the Court on the Defendants' Second Motion for Summary Judgment [Dkt. #30]. Plaintiff Willis sues Defendants Washington State Department of Social and Health Services, Western State Hospital, Ron Adler (its former CEO), and Brian Waiblinger, M.D. (its former Medical Director and a licensed psychiatrist) for unduly restraining his liberty by forcing him to languish in jail for 91 days while he awaited admission to Western State to have his competency restored. He also claims the Defendants falsely imprisoned him and were negligent in failing to treat him promptly.

The Court denied Adler's and Waiblinger's first motion for summary judgment, concluding they were not entitled to qualified immunity because at the time of Willis's detention, it was clearly established that a lack of facilities could not excuse the unconstitutionality of

ORDER - 1

indefinitely detaining one awaiting competency restoration. Adler and Waiblinger now hang their hats on *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014), arguing that a lack of resources is indeed a defense to a § 1983 claim for damages, such as this one. They argue that because DSHS and the State Legislature control Western State's budget and capacity for patients—not them—they cannot be held liable for forcing Willis to remain in jail, incompetent to stand trial. Willis argues *Peralta's* cost defense cannot save Adler and Waiblinger from liability because they were aware he was awaiting admittance and had the power to admit him.

Adler, Waiblinger, DSHS, and Western State also ask the Court to dismiss Willis's negligence and false imprisonment claims against them because, they argue, a Washington statute immunizes them. Willis disagrees, arguing RCW 10.77.068(5) maintains all existing claims related to the timeliness of competency evaluations or admissions; it just establishes no new cause of action. The Court heard oral argument on the Defendants' motion.

## I. DISCUSSION

**A. Factual[1] and Procedural Background and Housekeeping.**

Willis was charged with second degree assault and felony harassment. On August 27, 2014, Pierce County Superior Court Judge Cuthbertson found Willis incompetent and committed him to Western State for a period not to exceed ninety days. Western State's 270 forensic-treatment beds were full, with a waiting list of over 100 criminal defendants. On October 21, 2014, Willis still remained in jail, mostly in solitary confinement, and Cuthbertson found DSHS in contempt of his order. He issued a fine of $500 per day "until the contempt is purged." Ninety-

---

[1] For a more detailed description of the facts, see the Court's prior Order on the Parties' Cross-Motions for Summary Judgment [Dkt. #29].

one days after Cuthbertson's initial order, on November 26, 2016, Western State admitted Willis for competency restoration.

Willis sued Adler, Waiblinger, DSHS, and Western State for restraining his liberty without due process of law under 42 U.S.C. § 1983; for negligence in shirking their duty of providing him reasonable, timely restorative care; and for false imprisonment for forcing him to remain in jail despite a court order referring him to Western State. He moved for summary judgment on his § 1983 claim against the state agencies and the individual defendants in their official capacities. The Court denied his motion because the Eleventh Amendment protects these defendants from suit. *See* Dkt. #29 (Order on 1st MSJ) at 6. The Defendants now ask the Court to dismiss Willis's § 1983 claims against them for the same reason. Willis does not oppose their motion. His § 1983 claims against DSHS, Western State, and Adler and Waiblinger in their official capacities are DISMISSED.

Adler and Waiblinger also moved for summary judgment on Willis's § 1983 claims against them personally, arguing they were entitled to qualified immunity. They conceded that detaining Willis after the superior court had ordered him admitted to Western State violated his constitutional rights, but they denied that such a violation, when caused by a spike in the number of incapacitated defendants requiring restorative treatment, was clearly established. The Court disagreed, concluding *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1102, 1122 (9th Cir. 2003), had established, years before Willis's detention, that indefinitely detaining incompetent defendants because of a lack of facility space violates those defendants' rights.

Adler and Waiblinger move again for summary judgment, asking the Court to reconsider its decision after *Peralta*. They argue *Peralta* forecloses suit under § 1983 against individual defendants with no control over a state agency's budget when a lack of resources caused a

constitutional violation. They argue that because they did not set Western State's budget, they cannot be held liable for violating Willis's Fourteenth Amendment rights. Willis attempts to distinguish *Peralta* by arguing that unlike the defendant in that case (a staff dentist at a jail) Adler and Waiblinger each had administrative power. He also argues Adler, at least, could have made an exception for him, as he had for others.

Adler and Waiblinger, joined by DSHS and Western State, also ask the Court to dismiss Willis's negligence and false imprisonment claims against them. They argue a Washington State statute, RCW 10.77.068(5), bars Willis's state law claims because it allegedly provides that no cause of action may lie from the State's failure to timely admit a criminal defendant into a state mental hospital for inpatient competency services.

Willis responds that while RCW 10.77.068(5) creates no new cause of action, it does not immunize defendants from preexisting state law claims arising from inadequate competency evaluations and restoration services.

The Defendants also argue Willis's 91-day detention resulted from the superior court's actions, not theirs, so he cannot maintain a false imprisonment action against them. Willis argues the Defendants bear responsibility because despite a court order calling for his admittance to Western State and a contempt order punishing them for each day they delayed so doing, they refused to admit him for months.

**B.      Standard of Review.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

**C.     Section 1983 Claim against Adler and Waiblinger.**

    **1.     Applicability of *Peralta*.**

Adler and Waiblinger ask the Court to dismiss Willis's claims against them because, they argue, *Peralta* forecloses his ability to sustain a damages action against them in their personal capacities. They argue the State's failure to adequately address the dearth of forensic treatment beds, staff, and other resources cannot be imputed to them.

*Peralta* considered "whether prison officials sued for money damages under 42 U.S.C. § 1983 may raise a lack of available resources as a defense." 744 F.3d at 1081. While incarcerated at a California state prison, Peralta complained of tooth pain, cavities, and bleeding gums. *See id.* at 1081. The prison had only one dentist for every 2,000 patients, and Peralta waited several months before his teeth were cleaned. *See id.* He sued Dr. Brooks, the staff

1 dentist, (and others) for deliberate indifference to his serious medical needs. The jury returned a
2 verdict for Brooks, and Peralta challenged the jury instructions.

3 The district court instructed the jury it could consider "the personnel, financial, and other
4 resources available" to Brooks when assessing whether he had met his duties to Peralta under the
5 Eighth Amendment. *Id*. at 1082. The Ninth Circuit decided the jury had considered these
6 constraints properly where Peralta was seeking to hold Brooks "personally liable for failing to
7 give Peralta care that Brooks would have found impossible to provide." *Id*. at 1082–83
8 (distinguishing a claim for prospective/injunctive relief, where a lack of resources is *not* a
9 defense). It explained prison officials are not deliberately indifferent to a prisoner's medical
10 needs unless they act wantonly, and whether an official's conduct can be characterized as
11 "wanton" depends on the constraints facing him—including a lack of resources and an inability
12 to obtain more. *See id.* at 1082 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and *Wilson v.
13 Seiter*, 501 U.S. 294, 303 (1991)).

14 Adler's and Waiblinger's argument that Willis's § 1983 claim against them should be
15 dismissed outright because they lacked authority over the Legislature's funding decisions and
16 DSHS's budgeting decisions stretches *Peralta* well beyond its holding. *Peralta* concerned jury
17 instructions on Brooks' cost defense; it involved a question of fact for the jury on whether, given
18 the constraints facing Brooks, he had acted wantonly in delaying care to Peralta. *See id.* at 1082–
19 83. It did not announce a blanket foreclosure on all § 1983 claims for damages against individual
20 defendants, but gave courts and jurors permission to consider financial and other limiting
21 constraints when evaluating the wantonness of defendants' conduct. It does not offer automatic
22 immunity nor an absolute defense to those faced with budgetary constraints.

### 2. Controlling Standard of Analysis.

*Peralta* applies—the Court (or jurors) may consider a lack of resources as one of many factors affecting whether a defendant acted with wantonness—only if the deliberate indifference standard controls here.

"Pretrial detainees, whether or not they have been declared unfit to proceed, have not been convicted of any crime…. [C]onstitutional questions regarding the conditions and circumstances of their confinement are properly addressed under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment's protection against cruel and unusual punishment." *Mink*, 322 F.3d at 1120 (citing *City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979 (1983)). "[T]he Eighth Amendment provides a *minimum standard of care* for determining their rights, including the rights to medical and psychiatric care. *See id*. (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (emphasis in original).

In *Mink*, the Ninth Circuit refused to apply the Eighth Amendment's deliberate indifference analysis when considering whether the Director of Oregon's Department of Human Services and the Superintendent of Oregon State Hospital, in their official capacities, had violated a class of incompetent pretrial detainees' due process rights by unreasonably delaying their transfer from county jails to OSH for restorative treatment. *See* 322 F.3d at 1105. The plaintiffs sought injunctive and declaratory relief. *Mink* reasoned that applying the deliberate indifference standard would "relegate incapacitated criminal defendants to the same level of treatment afforded to convicted prisoners." *Id*. at 1120. Instead, it determined the question of whether an incompetent pretrial detainee's substantive due process rights have been violated "must be determined by balancing [his] interests in freedom from incarceration and in restorative

treatment against the legitimate interests of the state." *Id*. at 1121 (citing *Youngberg v. Romeo*, 457 U.S. 307, 102 S. Ct. 2452 (1982)).[2]

The Ninth Circuit recognized, however, that "[b]ecause deliberate indifference is a minimum standard of care in the substantive due process context," it remains useful in assessing whether an individual has violated a pretrial detainee's right to adequate medical care. *See* 322 F.3d at 1121 n. 11. Whether Adler and Waiblinger unduly restrained Willis's liberty by forcing him to languish in jail, delaying him restorative care, is best analyzed under this standard. Unlike *Mink* but like *Peralta*, Willis sues Adler and Waiblinger for damages in their personal capacities. The constitutionality of their actions should not hinge on a balancing of the State's generalized interests, but rather on how they treated Willis. As *Peralta* suggests, it would be improper to impute personal liability on them for the State's actions and interests, so their conduct should not be measured using such a standard. *See* 744 F.3d at 1084.

The deliberate indifference standard is also appropriate because the question of whether Adler and Waiblinger restrained Willis's liberty by delaying his access to restorative care when Western State was filled is more analogous to whether Brooks acted with deliberate indifference to Peralta's dental needs when overcrowding at the jail delayed Peralta's treatment, *see id.* at 1081, than to whether Oregon's state mental hospital should have to admit incompetent detainees faster. *See Oregon Advocacy Ctr. v. Mink*, No. CV 02-339-PA, 2002 WL 35578910, at *1 (D. Or. May 10, 2002). So long as the Court bears in mind that Adler and Waiblinger owed Willis *more* care than they would have owed a prisoner, *see Mink*, 322 F.3d at 1120, it can properly use

---

[2] The Court *in Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016), agreed, concluding *Mink's* analytical framework "is equally applicable to individuals awaiting competency evaluations."

the deliberate indifference standard to determine whether they violated Willis's substantive due process rights.

### 3. Whether Adler and Waiblinger Acted with Deliberate Indifference.

The Supreme Court defined "deliberate indifference" under the Eighth Amendment in *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970 (1994). It requires more than negligence but something less than acts or omissions taken to cause harm or taken knowing that harm will result. *See id.* It equates to the reckless disregard of a risk facing a detainee. *Id.*

The Court also adopted a subjective test for the defendants' *mens rea*. *See id.* at 838. It considered whether prison officials were deliberately indifferent to a transsexual prisoner's safety when they placed her in a violent male penitentiary with a history of sexual assaults. *See id.* at 831–32. The Court held that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of a substantial risk of serious harm and disregards it by failing to take measures to abate it. *See id*. at 846. The official must both know of facts from which the inference could be drawn that a substantial risk exists, and he must actually draw the inference, because "an official's failure to alleviate a significant risk that he should have perceived but did not … cannot … be condemned." *Farmer*, 511 at 838.

The Ninth Circuit cast into doubt the applicability of this "subjective deliberate indifference" test to pretrial detainees in *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017), in light of *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470, 192 L. Ed. 2d 416 (2015). In *Kingsley*, the Supreme Court considered a pretrial detainee's claim that officers used excessive force against him in violation of his Fourteenth Amendment rights. *See id.* It explained

that excessive force claims involve two state-of-mind questions: (1) whether an officer intended to apply—*deliberately* applied—force and (2) whether that force was "excessive." *See id.* at 2479. It held that the excessiveness of the force is evaluated using an objective, reasonable person standard. *See id.*

The *Castro* Court ran with *Kingsley's* holding, announcing courts should use an objective standard when evaluating pretrial detainees' failure-to-protect claims, too, 833 F.3d at 1070–71, and suggesting this standard might apply to other Fourteenth Amendment claims made by pretrial detainees. *See id*. at 1069–70 (touching on "the broader question [of] whether the objective standard applies to all § 1983 claims brought under the Fourteenth Amendment against individual defendants"). *Castro* considered whether two jailers violated an intoxicated pretrial detainee's rights by housing him with another detainee who they knew to be combative and by failing to supervise their cell adequately. *See id.* at 1065. It reasoned that the Supreme Court never intended to limit *Kingsley* to pretrial detainees' excessive force claims because its holding regarded "challenged governmental action[s]" generally, not just force claims. *See id*. at 1070 (citing *Kingsley*, 135 S. Ct. at 2473–74).

Willis states, in a conclusory fashion, that the Court should expand *Castro v. Los Angeles*, 809 F.3d 536 (9th Cir. 2015), to include his restraint-of-liberty claims. He contends the Court should apply an objective standard when considering each defendants' state of mind. For many reasons, the Court declines to extend *Kinglsey*/*Castro* beyond excessive force/failure-to-protect claims.

First, the Court disagrees with the notion that *Kingsley* supplanted *Farmer*. When defining "deliberate indifference," the Supreme Court noted that "'application of the deliberate indifference standard is *inappropriate*' in one class of prison cases: when 'officials stand accused

of using excessive physical force." *Farmer*, 511 U.S. at 835 (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S. Ct. 995 (1992)). Because in those cases, a prisoner must show more than "indifference;" he must show purposeful or knowing conduct. *See id*. In deciding how to evaluate such claims in *Kingsley* the Supreme Court addressed a question *Farmer* had left open.

Second, even had *Kingsley* supplanted *Farmer* for claims made under the Fourteenth Amendment (which it did not), it did not remove the requirement that a plaintiff show a defendant-officer *knowingly* applied physical force against the plaintiff. *See* 135 S. Ct. at 2472. It said only that a plaintiff need not prove the defendant had an "intent (or motive) to punish." *Id*. at 2473. He must show the amount of force applied was objectively excessive *and* the officer's "use of force [was] deliberate—*i.e.*, purposeful or knowing." *Id*. at 2472–73. Faced here with the later question, whether Adler and Waiblinger acted deliberately, the Court has no reason to consider the objective reasonableness of their conduct. As *Farmer* explained, an official should not be punished for a risk he did not perceive. 511 at 838.

Third, *Farmer's* test for deliberate indifference to a prisoner's safety matches Willis's claims more closely than *Kingsley's/Castro's* test for the reasonableness of a use of force, even though those plaintiffs were also pretrial detainees. *Castro's* holding is limited to failure-to-protect claims. And the parallels the Ninth Circuit recognized in *Castro* between excessive force and failure-to-protect claims (and found justifying an extension of *Kingsley*) do not exist between excessive force and restraint-of-liberty claims. The latter contains no application of violent physical force, by anyone, so an extension of *Kinglsey's* objective test would be improper.

For these reasons, *Farmer*'s subjective test continues to control court's analyses of deliberate indifference, whether the plaintiff's claim originates under the Eighth or the

1 Fourteenth Amendment. Willis must show (1) Adler and Waiblinger each were "aware of facts

2 from which the inference could be drawn that a substantial risk of serious harm" faced Willis,

3 *Farmer*, 511 U.S. at 837, (2) each defendant actually "[drew] the inference," *id.*, and (3) each

4 "wantonly" disregarded it. *Estelle*, 429 U.S. at 104.

5     It is not seriously disputed that Adler and Waiblinger each knew of Western State's bed

6 shortage, its unconstitutional delays in admitting incompetent defendants, and the superior

7 court's order that Willis be admitted. But their "wantonness" is disputed. Willis argues Adler and

8 Waiblinger each had administrative control over Western State's budget, and Adler, at least,

9 could have made an exception for him by admitting him sooner. In fact, there is no evidence nor

10 plausible argument that Adler and Waiblinger had meaningful control over Western State's

11 budget, their need for more doctors, more nurses, more security officers and certainly no control

12 over the spigot that commands more criminal defendants into an already over-taxed system. The

13 only argument that Willis can make is that Adler and Waiblinger could bump a similarly situated

14 patient from the next available bed and give it to Willis. Given the availability of the *Peralta*

15 lack-of-available-resources defense, no reasonable jury could find Adler and Waiblinger liable

16 for deliberate indifference or wanton conduct. While Adler and Waiblinger are not entitled to

17 qualified immunity in this circumstance, they do not need to rely on qualified immunity. They

18 did nothing wrong.

19 **D.**     **Negligence and False Imprisonment Claims.**

20     All four Defendants ask the Court to dismiss Willis's negligence and false imprisonment

21 claims against them because, they argue, RCW 10.77.068(5) abrogates all state law claims

22 involving the State's failure to timely admit a criminal defendant into Western State.

RCW 10.77.068 sets out "performance targets and maximum time limits" for competency evaluations and admissions for restorative services. RCW 10.77.068(1)(a) (2015). It gives Western State a maximum of fourteen days to admit pretrial detainees for legally authorized restoration treatment, running from the date Western State receives a referral from a court. *Id*. at (1)(a)(ii)(B), (1)(b). It also directs DSHS "to manage, allocate, and request appropriations for resources" necessary to meet these targets "whenever possible." *Id*. at (1)(a). If Western State fails to meet a deadline, it may claim as a defense that the reason for its delay was outside of its control, such as if "[a]n unusual spike in the receipt of evaluation referrals or in the number of defendants requiring restoration services" occurred. *Id*. at (1)(c). It must prove this defense by a preponderance of the evidence.

RCW 10.77.068(5) announces it "does not create any new entitlement or cause of action.…" It does not abolish all preexisting state law claims. In fact, in affording the State a defense to them, it recognizes the continued availability of these claims.

RCW 10.77.068(5) does not grant immunity to the defendants from all existing state claims theoretically applicable in this circumstance.

The Defendants argue Willis's false imprisonment claim should be dismissed for the additional reasons that the superior court, not Western State, detained him while he waited restorative services and that he was held under a valid court order. Willis argues his imprisonment is attributable to the Defendants because the superior court ordered Western State to admit him, which it did not do for months.

An "imprisonment is false if it is unlawful." *Kellogg v. State*, 94 Wash. 2d 851, 854, 621 P.2d 133, 136 (1980). "A lawful imprisonment following proper arrest may, in some

circumstances, become unlawful," such as if one is detained "for more than a reasonable time." *Id.*

Willis was detained by order of the Superior Court. He was kept in the County jail awaiting a bed at Western State where he could be housed and receive the restorative services he needed to stand trial. At the time, Western State was in crises. They didn't have control over the supply of criminal defendants who were ordered to receive psychiatric care in a maximum security facility.[3] They had no control over the ability to expand the resources to meet the demands by the judiciary—those resources are supplied by the legislature. The delta between need and capacity was such that tinkering and tampering with the system could not cure the chronic problem in time to meet Willis' constitutional needs.

The problem repeated altogether too often is a rapidly expanding population of court-ordered psychiatric services to be performed within an institution that is woefully under-funded. A judge has responsibility to deal with every case that comes before him. If law and circumstance demand the court to order a defendant for psychiatric services, the judge is duty bound to require it. The judges who order these services for criminal defendants are properly imbued with judicial immunity. A judge who orders commitment within a reasonable period, and for a limited duration, has the power to cite offending providers with contempt for tardy responses. She can impose fines for violation of her orders. In addition, the court has the power, in a criminal setting, to dismiss the charges against a defendant as a remedy for the state's non-compliance with its orders—a solution totally unsatisfactory to a judge sworn to uphold the law, dispense justice, and protect the community.

---

[3] Criminal defendants are ordered to Western State by Superior Courts in Western Washington to be evaluated to determine whether they're competent to stand trial. If they're not, they receive mental health treatment to restore competency. Also, those defendants found not guilty of a crime by reason of insanity also are assigned to receive mental health treatment at those same forensic wards.

DKT. #30 - 14

The lawmakers who control the purse are likewise cloaked with legislative immunity. They can work toward consensus. They can study the problem with the help of consultants. They can put forth plans to solve overcrowding conditions with new tax bills or changed priorities within existing funding. While all this work is done, the fines mount higher and higher. Usually, once a plausible solution is worked out, the contempt orders are stricken, no money is paid into the registry of the court, and the main players in this saga wait to see if the solution is sufficient to meet Constitutional muster.

In this claim for damages, Willis seeks redress for actions that officials could have taken in the past, but did not. The state and its agencies are immune from prisoner suits for damages. Prisoners can sue only for injunctive relief. *See, Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 & n. 10 (1989). *See also, Brown v. Plata*, 131 S. Ct. 1910 (2011). That leaves the officials (Adler and Waiblinger) to answer—in their personal capacities—for the injustice done to Mr. Willis. As *Peralta* noted, 744 F.3d at 1084, there are some in the judiciary and among the legal profession that hold officials in their personal capacity accountable as a straw man for treatment caused by shortages beyond their control, on the theory that the state will wind up paying any damages award, is preferable to leaving a wrong un-redressed. The state is protected from monetary damages by the Eleventh Amendment. It is wrong to transfer any blame from the immunized state to an employee, who himself has committed no wrong. For this reason, absent any evidence of wrongdoing on their part, Adler and Waiblinger's Motions for summary judgment on Willis's state law claims against them is GRANTED and those claims are DISMISSED.

**CONCLUSION**

For the foregoing reasons, the state defendants are immune from damages claims brought by Willis. As for Adler and Waiblinger, there is no evidence that they did anything wrong to contribute or exacerbate the crisis that led to the constitutional violations that Willis complains of. No reasonable jury could find otherwise, given the record developed.

Plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Dated this 21st day of September, 2017.

Ronald B. Leighton
United States District Judge